```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
                                                             :
   JOSE S.,                                                  :
                                                             :
                           Plaintiff,                        :    24-CV-3667 (OTW)
                                                             :
               -against-                                     :    **OPINION & ORDER**
                                                             :
   COMMISSIONER OF SOCIAL SECURITY,                          :
                                                             :
                           Defendant.                        :
                                                             :
-------------------------------------------------------------x
```

**ONA T. WANG, United States Magistrate Judge:**

I.   **BACKGROUND**

Plaintiff Jose S.[1] ("Plaintiff") filed the instant action pursuant to §205(g) of the Social Security Act ("SSA") seeking review of Defendant Commissioner of Social Security's ("Defendant") denial of Plaintiff's application for Title II Social Security Disability Insurance Benefits ("DIB"). Plaintiff contends that the Administrative Law Judge ("ALJ") erred because the ALJ's decision was not supported by substantial evidence and he failed to properly develop the administrative record. For the following reasons, I concur. Accordingly, Plaintiff's motion for judgment on the pleadings is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this Opinion and Order.

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

## II. ADMINISTRATIVE PROCEEDINGS

### A. Plaintiff Requests an ALJ Hearing After DIB Claim is Denied

After suffering a leg fracture on March 11, 2021, which required multiple surgeries to repair, Plaintiff applied for DIB in June 2021. (ECF 7 at 22). Defendant denied Plaintiff's initial application on August 11, 2021, and denied it again upon reconsideration on January 10, 2022. (ECF 7 at 22). Plaintiff then requested a hearing with an ALJ. (ECF 7 at 22). On May 9, 2023, an ALJ held a telephonic hearing. (ECF 7 at 20-29).

### B. Evidence Admitted at the Hearing Before the ALJ

#### 1. Medical Records

At the hearing, the ALJ admitted the following Plaintiff's medical records:

| 2011 - 2017 | Pre-incident medical records regarding arthritis and sacroiliitis | Dr. Ghaw Mt. Sinai Hospital NYU Hospital |
|---|---|---|
| **March 11, 2021** | **Plaintiff's right leg is broken in an altercation.** | **Lincoln Hospital** |
| March 12, 2021 | Plaintiff undergoes a four-compartment fasciotomy and spanning external fixation surgery | Lincoln Hospital |
| March 15, 2021 | Wound vac for treatment of compartment syndrome and partial wound closure performed | Lincoln Hospital |
| March 18, 2021 | Remainder of Plaintiff's wound is closed, and he is discharged home on crutches | Lincoln Hospital |
| March 24, 2021 | Follow up with physician assistant | Lincoln Hospital |
| April 1, 2021 | Plaintiff undergoes external fixator removal surgery as well as an open reduction and internal fixation surgery on the right proximal tibia | Lincoln Hospital |
| April 14, 2021 | Follow up appointment with physician assistant | Lincoln Hospital |
| April 28, 2021 | Follow up appointment with physician assistant | Lincoln Hospital |
| June 17, 2021 | Follow up with physical medicine and rehabilitation physician Dr. Magabo | Lincoln Hospital |
| July 14, 2021 | Follow up with physician assistant | Lincoln Hospital |
| **August 9, 2021** | **Dr. Perotti reviews medical records to date** | |

| | | |
|---|---|---|
| August 31, 2021 | Follow up with Dr. Magabo | Lincoln Hospital |
| October 13, 2021 | Follow up with physician assistant | Lincoln Hospital |
| October 20, 2021 | Evaluation by physical therapist. | LI Physical Therapy |
| October 29, 2021 | Physical therapy visit | LI Physical Therapy |
| November 9, 2021 | Physical therapy visit | LI Physical Therapy |
| November 16, 2021 | Physical therapy visit | LI Physical Therapy |
| November 18, 2021 | Physical therapy visit | LI Physical Therapy |
| **November 22, 2021** | **Dr. Chen reviews the same medical records as Dr. Perotti and records from October 2021.** | |
| November 23, 2021 | Physical therapy visit | LI Physical Therapy |
| December 15, 2021 | Visit with orthopedic physician Paul Pipitone / radiologist | Lincoln Orthopedics |
| June 22, 2022 | Follow up with orthopedic physician Dr. Malik | Lincoln Orthopedics |
| September 14, 2022 | Follow Up with orthopedic physician Dr. Malik | Lincoln Orthopedics |
| March 2023 | NYU visit complaining of pain in knees, dizziness | NYU Hospital |

(*see* ECF 7 at 269-356; 7-1; 7-2).

The only expert reports that the ALJ admitted were from Medical Doctors Perotti and Chen[2], who reviewed Plaintiff's medical records related to the March 2021 injury in August 2021 and November 2021, respectively. (ECF 7 at 53-61, 62-72).

    2.    *Dr. Perotti's Report*

Dr. Perotti based their report on a review of medical records from Lincoln Hospital through July 2021 and some records from Mt. Sinai Hospital related to Plaintiff's arthritis and sacroiliitis

---

[2] A first name is not given for either.

conditions[3]. (ECF 7 at 56). The report consists of a form with questions including spaces for responses below. Dr. Perotti indicates their report does not include personally examining Plaintiff or any "indication that there is a medical opinion from any medical source." (ECF 7 at 56, 58). In the section asking if a consultative examination ("CE") is required, Dr. Perotti wrote "[y]es" because "[a]dditional evidence is required to establish current severity of the individual's impairment(s)." Under the next section asking if "the individual's medical source(s)" were contacted to perform the CE(s)," Dr. Perotti writes "[n]o…[t]he individual has no medical source to perform the CE(s)." (ECF 7 at 56 – 57). In the space for "Findings of Fact and Analysis of Evidence," Dr. Perotti writes simply "X" and notes "[n]o 416-Medical Evaluation[4] have (sic) been associated with this claim." (ECF 7-57).

In the RFC Analysis section[5], Dr. Perotti writes that Plaintiff's right leg fracture is a "medically determinable impairment" that is "severe" and could "reasonably be expected to produce …. pain and [Plaintiff's] other symptoms." (ECF 7 at 57). Dr. Perotti also finds that Plaintiff's statements about "the intensity, persistence, and functionally limiting effects of the symptoms" are "sustained by the objective medical evidence." (ECF 7 at 57). Dr. Perotti's conclusion is that "given [Plaintiff's] young age[6] and otherwise excellent health and timely uncomplicated management of his tibial plateau fracture, it is *anticipated* that [Plaintiff's] tibial plateau fracture *will* be[come] non-severe." (ECF 7 at 57) (emphasis added).

---

[3] The report provides date ranges for all records that were reviewed but it is not clear where there is overlap between different sources and dates, which records were actually reviewed.
[4] A "416 Medical Evaluation" refers to the 5-step disability analysis promulgated by 20 C.F.R § 416.920(a)(4)(i)–(v). *See* III(C), *infra.*
[5] Dr. Perotti's report is dated August 9, 2021; He states the RFC analysis is for "12 Months After Onset: 3/10/2022" (ECF 7 at 58).
[6] Plaintiff was 48 years old at the time of this report. (ECF 7 at 53).

4

### 3.  Dr. Chen's Reconsideration of Dr. Perotti's Report

Dr. Chen reviewed Plaintiff's medical records on reconsideration in November 2021. (ECF 7 at 63 - 72). Dr. Chen's report consists of the same form used by Dr. Perotti and is also not based on a personal examination of Plaintiff. It appears that Dr. Chen reviewed the same records as Dr. Perotti as well as additional records from Lincoln Hospital through October 2021[7]. (ECF 7 at 67). In the section asking if a CE is required, Dr. Chen wrote "no" with no other explanation.  In the immediately following section, "Findings of Fact and Analysis of Evidence," Dr. Chen notes that they "reviewed [Dr. Perotti's] past decision-- allegations of sacroiliac joint and hands not addressed. (sic). Only [medical evidence] in file for these allegations is diagnosis codes from 2016, 2017-- there is insufficient evidence in file to address the severity of these impairments on functioning for the time period last insured…" (sic) (ECF 7 at 67 – 68). Dr. Chen also writes that "[n]o 416-Medical Evaluation[8] have (sic) been associated with this claim." (ECF 7 at 68).

Under the section discussing the severity of Plaintiff's symptoms, Dr. Chen writes that Plaintiff's right leg fracture is a "medically determinable impairment" and "severe" but that there is "insufficient evidence to evaluate this claim." (ECF 7 at 68). In the space for "Symptoms Evaluation," Dr. Chen writes "This section has not been completed for this claim." (ECF 7 at 69.) Dr. Chen's RFC analysis[9] repeats Dr. Perotti's *verbatim,* adding only "there is insufficient evidence in file to determine the severity of [Plaintiff's arthritis and sacroiliitis conditions] for the time period last insured." (ECF 7 at 69).

---

[7] *See* n. 3 *supra*.
[8] *See* n. 4 *supra*.
[9] Dr. Chen states this analysis is for "Date Last Insured: 06/30/2021." *See* n. 5 *supra*.

5

### 4. Plaintiff's Additional Medical Records

Plaintiff also submitted medical records detailing further contact with doctors, such as orthopedists and physical therapists, in 2022 and 2023 *after* Drs. Perotti and Chen reviewed his medical records. Even a cursory review of these records shows Plaintiff made consistent complaints of, *inter alia*, chronic knee or leg pain. (*See e.g.* ECF 7-1 at 271, 303). These records do not contain an opinion by any medical provider as to whether or not Plaintiff's symptoms "significantly limit[] [his] ability to perform basic work activities." 20 CFR 404.1520(c).

### 5. Plaintiff's Testimony at the 2023 Hearing

Plaintiff testified that he broke his leg during an altercation on March 11, 2021. (ECF 7 at 37 ¶¶ 6-7). Plaintiff also testified that, before the injury, he had arthritis, and that "now with the injury, it's affecting my walking ability on my knee and tremendous pain when I walk on my knee without my cane." (ECF 7 at 38 ¶ 12 – 39). Plaintiff clarified that he used a cane every day; otherwise, walking caused him incredible pain. (ECF 7 at 39 ¶ 2). Plaintiff also testified he couldn't carry a gallon of milk upstairs to his apartment. (ECF 7 at 42 ¶ 5). The only follow-up question from the ALJ was what kind of medications Plaintiff took. (ECF 7 at 45 ¶ 3).

### 6. Testimony from the Vocational Expert

The ALJ concluded the hearing with testimony from a vocational expert which, because the ALJ did not reach the RFC analysis in his decision, is not relevant here.

### C. The ALJ Issues and Unfavorable Finding Which Plaintiff Now Appeals

Following the hearing, the ALJ issued an unfavorable finding on May 22, 2023 (ECF 7 at 19 - 29). The Appeals Council subsequently denied Plaintiff's request for review. (ECF 7 at 1-7). On May 13, 2024, Plaintiff filed the instant action seeking the Court's review of the ALJ's decision. (ECF 1). Defendant filed the Social Security Administrative Record ("SSAR") on July 12, 2024. (ECF 7). Plaintiff moved for judgment on the pleadings on October 21, 2024, supported by a

memorandum of law. (ECF Nos. 10, 11). Defendant opposed that motion on December 27, 2024.[10]. (ECF 12). Plaintiff replied to Defendant's opposition on January 21, 2025, and the motion was fully briefed. The parties consented to magistrate judge jurisdiction for all purposes on January 22, 2025. (ECF 16).

### III. APPLICABLE LAW

#### A. Standard of Review

A motion for judgment on the pleadings should be granted if the pleadings make clear that the moving party is entitled to judgment as a matter of law. Additionally, the Court's review of the Defendant's decision is limited to an inquiry into whether there is substantial evidence to support the Defendant's findings and whether the correct legal standards were applied. Substantial evidence is more than a mere scintilla. It only requires the existence of "relevant evidence as a reasonable mind might accept as adequate to support a conclusion," even if there exists contrary evidence. *Halloran v. Barnhart*, 362 F.3d 28, 31 (2d Cir. 2004) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 [1971]); *Alston v. Sullivan*, 904 F.2d 122, 126 [2d Cir. 1990) (same). This is a "very deferential standard of review." *Brault v. Comm'r of Soc. Sec.*, 683 F.3d 443, 448 (2d Cir. 2012). The Court may not determine *de novo* whether Plaintiff is disabled but must rely on the underlying record. "When there are gaps in the administrative record or the ALJ has applied an improper legal standard," an explanation of the ALJ's reasoning is warranted, or when the ALJ's rationale is unclear, as is the case here, the Court should remand "for further development of the evidence" *Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996).

---

[10] Defendant's opposition is titled "Commissioner's Brief" and is not styled as a cross-motion for judgment on the pleadings, but Defendant does ask the Court to affirm the ALJ's findings. (ECF 12).

### B. ALJs Have an Affirmative Duty to Develop the Record

"Social Security proceedings are inquisitorial rather than adversarial." *Jackson v. Kijakazi*, 588 F. Supp. 3d 558, 577 (S.D.N.Y. 2022) (quoting *Sims v. Apfel*, 530 U.S. 103, 110–11 [2000]). "Consequently, the social security ALJ, unlike a judge in a trial, must ... affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Id* (quoting *Moran v. Astrue*, 569 F.3d 108, 112 [2d Cir. 2009] [internal quotation marks omitted]). Specifically, under the applicable regulations, ALJs are required to develop a claimant's complete medical history. *Id* (quoting *Pratts v. Chater*, 94 F.3d 34, 37 [2d Cir. 1996] [citing 20 C.F.R. §§ 404.1512(d)–(f)]). Crucial here, this responsibility "encompasses not only the duty to obtain a claimant's medical records and reports *but also the duty to question the claimant adequately* about any subjective complaints and the impact of the claimant's impairments on the claimant's functional capacity." *Id* (quoting *Pena v. Astrue*, No. 07-CV-11099, 2008 WL 5111317, at *8 [S.D.N.Y. Dec. 3, 2008] [citations omitted]) (emphasis added). The ALJ must develop the record even where the claimant has legal counsel. *See, e.g.*, *Chater*, 77 F.3d at 47. Remand is appropriate where this duty is not discharged. *See, e.g.*, *Moran*, 569 F.3d at 114–15 (2d Cir 2009) ("We vacate not because the ALJ's decision was not supported by substantial evidence but because the ALJ should have developed a more comprehensive record before making his decision").

### C. The ALJ Must Apply a 5-Step Evaluation of Plaintiff's Disability Claim

To be awarded disability benefits, the SSA requires that one have the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ

makes this determination through a 5-step evaluation process. First, the Plaintiff must provide evidence which supports the ALJ's determination that:

> (1) the Plaintiff is not currently engaged in substantial gainful activity;
>
> (2) that Plaintiff's impairment is so severe that it limits their ability to perform basic work activities;
>
> (3) that Plaintiff's impairment falls under one of the impairment listings in 20 C.F.R. Pt. 404, Subpt. P, Appendix 1 such that the Plaintiff may be presumed to be disabled. Absent that, the ALJ must determine the Plaintiff's Residual Functional Capacity ("RFC"), or their ability to perform physical and mental work activities on a sustained basis; and
>
> (4) the RFC, if applicable, does not allow Plaintiff to meet the physical and mental demands of his prior employment.

If the ALJ finds Plaintiff's evidence has satisfied all four of these steps, the burden then shifts to the Commissioner to prove that, based on Plaintiff's RFC, age, education, and past work experience, Plaintiff can perform some other work that exists in the national economy. *See* 20 C.F.R § 416.920(a)(4)(i)–(v). A finding that a claimant is either disabled or not disabled may be made at any time during the five-step disability determination process; once such a finding is made, no further review of the claim is necessary. *See* 20 C.F.R. § 404.1520(a)

### D. ALJs No Longer Apply the "Treating Physician Rule" When Weighing Medical Opinions

When weighing medical opinions for claims filed on or after March 17, 2017, as is this case here, ALJs apply the new regulations in 20 C.F.R. §§ 404.1520c and 416.920c. ALJs no longer apply the previously controlling "treating physician rule" which afforded controlling weight to the medical opinion of Plaintiff's treating physician. *See Acosta Cuevas v. Comm'r of Soc. Sec.*, No. 20-CV-502, 2021 WL 363682, at *9 (S.D.N.Y. Jan. 29, 2021) (report and recommendation) (collecting cases). Under the new regulations, ALJs "will not defer or give any specific

evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). Instead, ALJs "will articulate in [their] determination or decision how persuasive [they] find all of the medical opinions." 20 C.F.R. § 416.920c(b) (emphasis added). ALJs must consider all medical opinions and determine their respective persuasiveness considering: supportability; consistency; relationship of the medical source to the claimant; specialization; and "other factors." 20 C.F.R. § 404.1520c(c)(1)–(5). The supportability and consistency factors are the "most important." 20 C.F.R. § 416.920c(a).

Accordingly, the regulations mandate that ALJs "will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions." 20 C.F.R. § 416.920c(b)(2) (emphasis added); see also *Rivera v. Comm'r of Soc. Sec.*, No. 19-CV-4630, 2020 WL 8167136, at *22 (S.D.N.Y. Dec. 30, 2020), *adopted*, 2021 WL 134945 (S.D.N.Y. Jan. 14, 2021) (remanding so that ALJ may "reevaluate the persuasiveness assigned to the opinion evidence of record and explicitly discuss both the supportability and the consistency of the consulting examiners' opinions"); *Vellone v. Saul*, No. 20-CV-261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021), *R. & R. adopted*, 2021 WL 2801138 (S.D.N.Y. July 6, 2021) ("[I]n cases where the new regulations apply, an ALJ must explain [their] approach with respect to the first two factors when considering a medical opinion.") (emphasis in original). "Supportability" is "the objective medical evidence and supporting explanations presented by a medical source." 20 C.F.R. § 404.1520c(c)(1). "Consistency" refers to how the medical source's opinions compare with "evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2). Although ALJs are only required to articulate their consideration of

10

those two factors, ALJs must consider all five factors when determining a medical opinion's persuasiveness. 20 C.F.R. § 416.920c(c).

### E. Credibility Analysis

"While an ALJ 'is required to take [a] claimant's reports of pain and other limitations into account' [in making a credibility determination] ... [they] are 'not required to accept the claimant's subjective complaints without question.'" *Campbell v. Astrue*, 465 Fed.Appx. 4, 7 (2d Cir. 2012) (summary order) (quoting *Genier v. Astrue*, 606 F.3d 46, 49 [2d Cir. 2010]). "Rather, the ALJ may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Id.* The ALJ must, however, include "specific reasons for [their] finding on credibility, supported by the evidence in the case record," which should be clear as to "the weight the [ALJ] gave to the [claimant's] statements and the reasons for that weight." *See* Social Security Rulings ("SSRs") 96-7p. The factors that an ALJ should consider in evaluating the claimant's credibility are: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of the symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medications taken to alleviate the symptoms; (5) any treatment, other than medication, that the claimant has received for relief of the symptoms; (6) any other measures that the claimant employs to relieve the symptoms; and (7) other factors concerning the claimant's functional limitations and restrictions as a result of the symptoms. *See* 20 C.F.R. § 404.1529(c)(3)(i)-(vii). An ALJ's credibility determination is entitled to "special deference," as he or she "ha[s] the opportunity to observe [the claimant's] demeanor." *Tarsia v. Astrue*, 418 Fed.Appx. 16, 19 (2d Cir. 2011) (quoting *Yellow Freight Systems Inc. v. Reich*, 38 F.3d 76, 81 [2d Cir. 1994]) (internal quotation marks omitted).

## IV.  ANALYSIS

Based on my review of the record, the ALJ did not base his opinion on substantial evidence with respect to his credibility assessment of Plaintiff's testimony, the medical evidence in the record, or the weight he assigned to Drs. Perotti's and Chen's review of Plaintiff's medical records; and the ALJ failed to develop the record by not ordering a consultive examination as recommended by Dr. Perotti.

### A.  The ALJ's Decision (ECF 7 at 24-29)

In accordance with 20 C.F.R § 416.920(a)(4), the ALJ evaluated Plaintiff's claim using a 5-step evaluation to reach an unfavorable finding:

*1. Step One*

The ALJ correctly finds that Plaintiff last met the insured status requirements of the SSA on his last insured date of June 30, 2021, and did not engage in substantial gainful activity after the alleged onset date through his date last insured. *See* 20 CFR 404.1571 *et seq.* (ECF 7 at 24).

*2. Step Two*

Next, the ALJ determined Plaintiff had several medically determinable impairments, *inter alia*: right lateral tibial plateau fracture status post external fixation and "open reduction and internal fixation" surgeries; osteoarthritis of the right ankle and hands; and bilateral sacroiliitis. (ECF 7 at 24). However, the ALJ determined that those impairments did not "significantly limit [Plaintiff's] ability to perform basic work related activities for 12 consecutive months" and, therefore, Plaintiff "did not have a severe[11] impairment or combination of impairments." (ECF 7 at 24).

---

[11] An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight

In reaching this conclusion, the ALJ explains his three main considerations: (1) that Plaintiff's statements about "the intensity, persistence, and limiting effects of his symptoms…[are] inconsistent" (ECF 7 at 26); (2) the medical evidence "does not support finding the [Plaintiff's] right leg fracture severe" (ECF 7 at 28); and (3) that the RFC opinions offered by Drs. Perotti and Chen, which anticipate Plaintiff's "leg fracture" would become non-severe, were "generally persuasive." (ECF 7 at 28). With respect to the Plaintiff's alleged sacroiliitis and arthritis, the ALJ concludes that "[t]here is no evidence of a significant change or worsening of these conditions as of [March 2021.]" (ECF 7 at 28).

Since the ALJ determined that Plaintiff did not have a severe impairment or collection of impairments under the law, he ended his analysis at step 2. (ECF 7 at 28).

**B. Remand is Appropriate Because the ALJ Did Not Properly Develop the Administrative Record and Does Not Adequately Explain His Findings Based on Substantial Evidence.**

    *1.    The ALJ's Credibility Assessment is Not Supported by Substantial Evidence.*

The ALJ explains that he found "the [Plaintiff's] statements about the intensity, persistence, and limiting effects of his symptoms… are inconsistent because the [Plaintiff's] right leg fracture, although significant, improved with treatment within 12 months." (ECF 7 at 26). However, the ALJ does not properly analyze the Plaintiff's credibility under the 7 factors articulated by the SSRs, and, thus, does not base his credibility assessment on substantial evidence. *See* SSRs 96-7p.

The ALJ recites facts relevant to those factors, which he claims support his credibility analysis "for the reasons explained in this decision," but he does not explain those reasons in

---

abnormalities that would have no more than a minimal effect on an individual's ability to work. 20 CFR 404.1522, SSRs 85-28 and 16-3p).

his decision. (ECF 7 at 26). Instead, the ALJ cherry-picks specific facts he then uses to draw a negative inference against the Plaintiff. These include that Plaintiff told a doctor 18 months after his leg fracture that he could "walk a mile for exercise daily;" that Plaintiff's orthopedist advised Plaintiff to stop using a cane and did not "prescribe[] or recommend [Plaintiff] use a cane;" and that Plaintiff reported he could "lift up to 20 pounds" in a July 2021 function report.[12] (ECF 7 at 26). The ALJ does not consider any factors which favor Plaintiff's credibility or explain in any detail how his cherry-picked facts are supported by the objective medical evidence. *See Maroulis v. Colvin*, No. 16-CV-2427, 2017 WL 7245388, at *29 (S.D.N.Y. Jan. 18, 2017) (citing *Cruz v. Barnhart*, 343 F. Supp. 2d 218, 224 [S.D.N.Y. 2004]) ("The ALJ must not pick and choose medical evidence in order to justify a negative credibility determination.") Accordingly, remand is required because, without an explanation of the ALJ's reasoning, the Court cannot determine if he applied the correct legal factors.[13]

        2.    *The ALJ's Interpretation that Plaintiff's Medical Record Shows His Symptoms Improved Within 12 Months is Not Based on Substantial Evidence*

It is impossible for the Court to determine if the ALJ's interpretation of Plaintiff's medical records is based on substantial evidence because the ALJ did not properly explain the weight he ascribed to the review of Plaintiff's medical records by Dr. Perotti and the reconsideration of Dr. Perotti's report made by Dr. Chen.

---

[12] The ALJ does not cite to any specific statement in the transcript as inconsistent with these claims but earlier states "[Plaintiff] further testified that he could only stand for 10-12 minutes at a time" and "has difficulty carrying a gallon of milk and a shopping bag at the same time." (ECF 7 at 26).

[13] In rejecting this portion of the ALJ's decision, the Court declines to reach the question of to whether or not Plaintiff's symptoms are severe, only that the ALJ's determination of Plaintiff's credibility is not supported by substantial evidence. The ALJ may avoid this result in the future by addressing the factors outlined in the SSRs and the merits of Plaintiff's complaints with respect to each of them in his future decisions.

The ALJ's only gesture to the factors he is required to consider by the SSA is a confusing and conclusory statement that he "found [the reports by Drs. Perotti and Chen] generally persuasive because they were based on a review of only a portion of the medical evidence; however…their overall assessments are nonetheless supported by the evidence of record" (sic). (ECF 7 at 29). The ALJ makes no other clear statements or offers any further reasoning as to whether Drs. Perotti's and Chen's reports are supported by "the objective medical evidence and supporting explanations presented by a medical source," and consistent with "evidence from other medical sources and nonmedical sources in the claim" beyond the conclusory statement that they are. *See* 20 C.F.R. § 404.1520c(c)(1).

The ALJ writes that Dr. Perotti and Dr. Chen found "[Plaintiff's] right leg fracture [is] severe, but they further indicated that it would *likely* improve to a non-severe impairment within 12 months of onset." (emphasis added). (ECF 7 at 29). However, Dr. Chen does not make any finding on Plaintiff's symptoms during their reconsideration review. (ECF 7 at 69). As for Dr. Perotti, their statement is clearly a prediction that Plaintiff *would likely* improve, not an opinion that Plaintiff's symptoms *have* improved. Indeed, Dr. Perotti's finding that the "objective medical evidence alone" sustains "the intensity, persistence, and functionally limiting effects of [Plaintiff's] symptoms" (ECF 7 at 58), directly contradicts the ALJ's conclusion but the ALJ does not even seem to recognize that much less address it. (ECF 7 at 29).

The ALJ's opinion in this case makes clear why the Second Circuit has "frequently cautioned that ALJs should not rely heavily on the findings of consultative physicians after a single examination." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (quoting *Selian v. Astrue*, 708 F.3d 409, 419) (internal quotation marks omitted). Here, the ALJ did not even have a single

15

examination to rely on; nevertheless, he did not hesitate to reach a finding that both "overlooked the facts in the record and, more egregiously, constituted an improper substitution … of [his] own lay opinion in place of medical testimony." *Selian*, 708 F.3d at 419 (2d Cir. 2013). An ALJ simply cannot decide that Plaintiff's symptoms improved by "arbitrarily substitu[ting] his own judgment for competent medical opinion." *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (citation and internal quotation marks omitted); see also *Greek v. Colvin*, 802 F.3d 370, 375 (2nd Cir. 2015) ("[an] ALJ is not permitted to substitute his own expertise or view of the medical proof…for any competent medical opinion") (citation omitted).

> 3.   the ALJ Failed to Develop a Comprehensive Record Because a CE was Recommended but Not Performed and Plaintiff's Arthritis and Sacroiliitis Conditions Were Not Considered in Combination with His Leg Fracture.

The ALJ's decision was not based on a comprehensive record because there are significant gaps and inconsistencies in Dr. Perotti's and Dr. Chen's reports. In Dr. Perotti's report, these include the space on the report provided for "Findings of Fact and Analysis of Evidence" in which Dr. Perotti simply wrote "X" (ECF 7 at 57), and that Dr. Perotti recommended a CE which was never performed. (ECF 7 at 56). Likewise, Dr. Chen's report is incomplete because, *inter alia*, it does not even consider the severity of Plaintiff's symptoms or explain why Dr. Perotti's recommendation that a CE be performed is wrong. (ECF 7 at 67). Dr. Chen even clearly warns the ALJ under the "Adult Disposition" section of their report that, "[t]here is insufficient evidence to evaluate the [Plaintiff's] claim." (ECF 7 at 68). Dr. Chen also writes that Dr. Perotti's assessment of Plaintiff's arthritis and sacroiliitis conditions is incomplete because "there is insufficient evidence in file (sic) to address the severity of [Plaintiff's arthritis and sacroiliitis symptoms] on functioning for the time period last insured…" (ECF 7 at 67). Additionally, Dr. Perotti's and Dr. Chen's review of Plaintiff's medical records predate significant events in the

development of Plaintiff's condition (*e.g.* he was not noted to use a cane until June 2022, six months after Dr. Chen's reconsideration review in November 2021, which notes only "able to bear weight with crutch use, also utilizing brace." [ECF 7 at 68]). The doctors' reviews do not even cover the full 12-month period after Plaintiff's injury, over which the ALJ concluded that Plaintiff's symptoms improved. (ECF 7 at 55 – 56, 65 – 67); *see Gutierrez v. Kijakazi*, No. 21-CV-3211, 2022 WL 16856426, at *17 (S.D.N.Y. Sept. 29, 2022) ("The ALJ's determination is not supported by substantial evidence for an additional reason: the ALJ relied on the consultative examinations of two doctors who had not reviewed relevant medical information about Plaintiff that could have affected their diagnoses and assessments"); *and see Murphy v. Saul*, No. 17-CV-1757, 2019 WL 4752343, at *6-7 (E.D.N.Y. Sept. 30, 2019) (concluding that reliance on opinion of consultative examiner who had not reviewed all relevant medical evidence was an error.) On remand, the ALJ must either request an up-to-date assessment from another consulting physician or, ideally, order Plaintiff to undergo a consultative examination.

Finally, the ALJ failed to consider how Plaintiff's right leg fracture impacted his previous arthritis and sacroiliitis conditions or *vice versa*. Upon remand, if the ALJ determines Plaintiff's symptoms are not individually severe, the ALJ still must explain his reasoning why Plaintiff's combination of symptoms are not severe when taken together, and not just individually. See 20 C.F.R. §§ 404.1523, 416.923 ("In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of *all* of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity") (emphasis added); *and see Novas v. Kijakazi*, 22-CV-1020 (S.D. N.Y.

17

Mar 08, 2023) ("When formulating a claimant's RFC, the ALJ must consider not only her severe impairments, but her non-severe impairments as well) (internal quotation marks omitted).

    4.    *Additional Considerations Upon Remand*

Since the ALJ ended his decision at step 2, I decline to reach the question of whether the ALJ's was correct in any RFC determination. However, I note that the ALJ's reasoning that, "even if I found [Plaintiff's] impairment[s] severe, there is no evidence the claimant could not perform work at the sedentary exertional level, which would not have resulted in a finding of disability as of his date last insured given his age, education, and vocational background" is conclusory and insufficient. *See Hilsdorf v. Comm'r of Soc. Sec.*, 724 F. Supp.2d 330, 347 (E.D.N.Y. 2010) ("[A]n ALJ who makes an RFC determination in the absence of [a] supporting expert medical opinion has improperly substitute[d] his own opinion for that of a physician, and has committed legal error.")

## V.    CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings is **GRANTED** and this case is **REMANDED** for further proceedings consistent with this Opinion and Order. The Clerk is respectfully directed to enter final judgment consistent with this decision and then close the file.

**SO ORDERED.**

Dated: September 24, 2025                              */s/ Ona T. Wang*
      New York, New York                    **Ona T. Wang**
                                                               United States Magistrate Judge